John C. RITTER, Plaintiff-Appellant,

v.

MOBIL OIL CORPORATION,
Defendant-Appellee.

No. 73-1082.

United States Court of Appeals,
Fifth Circuit.

Sept. 23, 1974.

Malcolm Harris, El Paso, Tex., for plaintiff-appellant.

Charles R. Jones, El Paso, Tex., Maurice E. Amidei, Dallas, Tex., for defendant-appellee.

Before BROWN, Chief Judge, and AINSWORTH and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellant, a gasoline distributor, sued Mobil Oil Corporation for allegedly inducing another to breach one of appellant's gasoline supply contracts. In response to special interrogatories F.R. Civ.P. 49(a), the jury found that there

was no enforceable contract between appellant and the gasoline purchaser and, in addition, Mobil did not knowingly induce a breach of the gasoline purchase agreement. Since we find that the issues were correctly submitted and the jury was properly charged, we affirm.

Appellant, J. C. Ritter, was a Mobil Oil distributor in El Paso, Texas from 1965 to 1971. When he took over this distributorship in 1965, he succeeded to certain contracts to supply gas to specific stations. One of these contracts, taken by assignment, was with Robert Rodela, the owner of a service station on Alameda Street in El Paso. That contract is the bone of contention here.

In 1961, Rodela purchased his service station from Ritter's predecessor, Thomas Burnham. At that time they made two agreements: (1) a contract of sale and note for the property and (2) a 15-year contract for the purchase of gasoline on a monthly basis. The gasoline contract did not specify a brand of gasoline but appeared to contemplate that a major company brand would be supplied. Rodela was required to purchase at least 5,000 gallons of gasoline a month but there was no negative covenant preventing him from purchasing additional supplies from other sources.

Although Rodela had no option to cancel the contract, the Seller (Burnham) could after 30 days cancel the contract with or without cause or at any time during the fifteen years cancel the contract upon Rodela's failure to perform any of the obligations imposed by the contract. Lastly, the contract contained the usual merger provisions, disclaiming the existence of any other understanding or agreement on any of the subjects covered by the contract.

In 1965 Ritter bought out all Burnham's assets, including his interests in the Alameda Street service station. In return for a specific sum, allocated according to a valuation Ritter placed on each of Burnham's individual assets, Ritter took an assignment of the contract of sale and note on the station and the Dealers Sales Agreement. The latter was clearly a novation in which for adequate consideration Rodela released Burnham and recognized the substitution of Ritter. Soon afterwards, Ritter reassigned both the contract of sale and the note, keeping for himself only the gasoline purchase agreement. By the end of 1965 Rodela refinanced his station and paid off both the note and contract of sale to Ritter's transferee.

From the time of the transfer of the gasoline purchase agreement until October 1971, Ritter supplied Mobil gasoline to Rodela each month. However, in October 1971 Ritter became the local distributor for Conoco and Rodela resisted his urgings that he sell that brand through his station. Subsequently, Rodela notified Ritter by letter that he did not wish to follow him in his conversion to Conoco. When Ritter brought the gasoline purchase agreement to his attention, Rodela responded that it was his impression that the agreement was intended only as security for the contract of sale and note. Since this note had been refinanced and severed, the security interest that supplied the consideration for the purchase agreement was satisfied.

Ritter responded with two suits: (1) against Rodela in state court for breach of contract and (2) a diversity suit in federal court alleging that Mobil induced Rodela to dishonor his contract with Ritter. In the federal suit, Ritter claimed damages for earnings lost over the period of the remainder of the contract in the amount of $55,428.75. Additionally, he thought $100,000.00 in exemplary damages were due him.

On appeal, Ritter alleges eight errors in the instructions to the jury [1] and one

---

1. The specific charge of the trial judge was:
   "So in this case, bearing in mind these instructions, if you should find that on the occasion in question that there was a valid and binding contract between John C. Ritter and Roberto B. Rodela for the purchase of gasoline and that Roberto B. Rodela was bound thereby to continue his

error regarding the exclusion by the trial judge of testimony by Rodela that appellant argues would indicate that Mobil, as an inducement to get Rodela to cancel the contract agreed to protect and defend him should he be sued by Ritter.

Appellant's challenges to the Court's instructions can be condensed to one major contention—that the Court should not have instructed the jury that they could find that Rodela had or thought he had any right to cancel the contract. The trial court charged the jury that if they found that the contract lacked consideration, was intended as a security instrument to secure payment of a note on Rodela's service station, or that Rodela believed he had a right to cancel the gasoline purchase contract then they could conclude that no contract was breached and the case could be resolved in favor of Mobil.

Appellant objected to these instructions on the grounds that the validity of the contract itself was never put into issue by appellant's case and, therefore, the jury was distracted from the essentials of the suit. Appellant insists that this Court is required to look exclusively to the face of the assignment of the Dealers Sales Agreement, accepting as immutable the recital of consideration on its face.

■■ We are not persuaded that the parole evidence rule confines our inquiry here. This is a contest not between the parties to a contract but between a contracting party and a stranger who allegedly induced a breach in this agreement.[2] In addition, the parole evi-

purchase of gasoline from Ritter, and if you should further find that Mobil Oil Corporation, acting through its employees knowingly induced Robert B. Rodela to breach such contract, then you will find for the Plaintiff, John C. Ritter, and assess the amount of damages in accordance with these instructions. On the other hand, if you should find and believe that John C. Ritter did not have a valid and binding contract with Robert B. Rodela for the sale of gasoline and that Rodela had the right to cancel the contract because there was no consideration or payment by Ritter for the contract, then you will find for the Defendant, Mobil Oil Corporation."

" . . . In this connection, you are instructed that it will be your duty to determine from the evidence *why* Robert B. Rodela discontinued his purchase of gasoline from John C. Ritter . . ."

In addition the special interrogatories submitted and the answers of the jury were:

"In answering all of these questions you will do so by a preponderance of the evidence.

1. Do you find that Rodela had the right to cancel his contract with Ritter at the time he wrote his letter of September 18, 1970?

Answer YES or NO  Yes

2. Do you find that Rodela believed and had reason to believe that he had the right to cancel said contract when he wrote the letter of September 18, 1970 cancelling said contract?

Answer YES or NO  Yes

If you found Rodela did believe that he had the right to cancel said contract, do

you find that he cancelled said contract because of such belief?

Answer YES or NO  Yes

4. Do you find that Mobil knowingly induced Rodela to breach his contract?

Answer YES or NO  No

5. If you found that Mobil induced Rodela to breach the contract in question, do you find that this conduct proximately caused the loss, if any, suffered by Plaintiff?

Answer YES or NO  -o-

\*        \*        \*        \*        \*

6. If you found Mobil induced Rodela to breach his contract, do you find that Mobil acted with malice toward Ritter?

Answer YES or NO  -o-

\*        \*        \*        \*        \*

7. Do you find that Mobil continuing to sell gasoline to Rodela after October, 1970, was done in good faith believing that he had the right to do so under all the circumstances in the case?

Answer YES or NO  Yes

8. What amount of gasoline do you find Rodela in reasonable probability would have purchased from Plaintiff from October 1, 1970 to March 8, 1976 if Rodela had not cancelled the contract.

Answer Amount: 325,000 gallons

9. What amount of money could Ritter have reasonably expected to have made from sales of gasoline to Rodela from October 1, 1970 to March 8, 1976?

Answer Amount: $15,000.00"

2. Milliken v. Anderson, 294 S.W. 921 (Tex. Civ.App.—Amarillo, writ ref'd n. r. e.) ; 30 Am.Jur.2d Evidence § 1031 (1967).

dence rule would not, in any case, prevent further investigation because of the familiar notion that the rule does not bar inquiry into the existence of consideration where the contract appears to contain merely an acknowledgment of something received rather than true contractual consideration.[3]

For those reasons we find no difficulty in permitting Rodela to explain and the jury to consider whether there was actual consideration given for the contract or it represented merely part of the security agreement on the sale of the service station. The existence of a valid contract is one of the basic factual elements of appellant's case and investigation was therefore relevant and proper.

In addition, there is ample evidence to support the findings of the jury that no enforceable contract actually existed at the time of the alleged tortious interference by Mobil. For example, during the trial Ritter himself testified that at the time that he purchased his predecessor's assets, he allocated no value at all in his scheduled inventory to the Dealers Sales Agreement between Burnham and Rodela. Convincing evidence is also shown by his uncontradicted statements to Rodela that Rodela "could sell peanuts in his station as far as he [Ritter] was concerned."

The charge, both general and the special interrogatories and answers to them, withstands the attacks made on it.

Appellant next complains that the District Judge improperly excluded testimony that indicated that Mobil promised to defend Rodela should he be sued by Ritter for breach of contract. Ritter argues that this is highly relevant on the issue of inducement and should have been admitted. We agree that the trial court had ample basis to exclude this evidence. While the proffered testimony did indicate such an agreement was made, these events occurred subsequent to appellant's state court suit against Rodela. Such subsequent events coming after the alleged wrongful interference permitted the trial judge to consider them to be irrelevant to the issue of whether Mobil had previously induced Rodela to stop purchasing gasoline from appellant.

Affirmed.

---

3. Rubin v. Adams, 368 S.W.2d 42 (Tex.Civ. App.—Amarillo, 1963, writ ref'd n. r. e.); City Investment & Loan Co. v. Wichita Hardware Co., 127 Tex. 44, 91 S.W.2d 683. (Tex.Comm'n App.1936, opinion adopted); 30 Am.Jur.2d Evidence § 1056 (1967).

